```
              UNITED STATES DISTRICT COURT
                DISTRICT OF MASSACHUSETTS
```

THOMAS C. LeMAY,                         No. 04-cv-12676-REK

    Plaintiff,

    v.

KATHLEEN DENNEHY, et al,

    Defendants.

<u>MEMORANDUM OF LAW IN SUPPORT
OF THE DEFENDANTS' MOTION TO DISMISS</u>

The defendants submit this memorandum of law in support of their motion to dismiss.

<u>INTRODUCTION</u>

The plaintiff, Thomas LeMay ("LeMay"), is a resident of the Massachusetts Treatment Center ("MTC") in Bridgewater, Massachusetts. The MTC is a secure treatment facility for sexually dangerous persons operated by the Massachusetts Department of Correction ("DOC"). LeMay was civilly committed to the MTC in 1999, pursuant to Mass. G.L. c. 123A. The defendants named in the complaint are state officials employed by the DOC.[1]

LeMay filed his complaint in this case on December 14, 2004. He complains about an incident that allegedly took place at the MTC on September 8, 2003. LeMay seeks declaratory and injunctive relief, together with monetary damages under 42 U.S.C. § 1983. He claims, *inter alia*, that correction officers violated his

---

[1] Kathleen Dennehy is the commissioner of correction; Robert Murphy is the superintendent of the MTC; Sgt. Phil Kane is a correction officer assigned to the MTC. His surname is mistakenly spelled "Cane" in the complaint.

2

constitutional rights during a urinalysis test.

For the reasons that follow, the complaint should be dismissed because it fails to state a claim upon which relief can be granted.

STATEMENT OF FACTS

LeMay alleges that on September 8, 2003 at around 1:30 AM, he was taken from the general population and placed in a cell in the "New Mans Section" for a urine test. (Complaint, ¶ 11) Correction officers ordered him to remove all of his clothes, including his shoes. (Complaint, ¶ 12) LeMay realized that he was standing in a puddle of urine. Id. He asked an unidentified correction officer (John Doe #1) if he could put his shoes on, but the officer told him to "shut up" and urinate in the cup that Sgt. Kane had given him. Id.

LeMay says that he was "viewed unnecessarily in the nude" by three male correction officers, i.e., Sgt. Kane and John Does #1 and #2. (Complaint, ¶ 14) Sgt. Kane went back to doing paperwork after handing the cup to LeMay, and the two other officers watched LeMay while he attempted to urinate. (Complaint, ¶ 15) According to LeMay, John Doe #1 pointed at LeMay's penis and giggled, and John Doe #2 began to laugh. (Complaint, ¶ 16) LeMay says that he felt like "he was in a strip club for homosexual (sic) on a stage for their sexual pleasure." Id. Sgt. Kane failed to stop the "sexual harassment" by the unknown officers. (Complaint, ¶ 17)

ARGUMENT

1. The Standard of Review

3

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must accept the factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff. Rodi v. S. New Eng. Sch. Of Law, 389 F.3d 5, 9 (1st Cir. 2004); Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). The court may dismiss the complaint only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

2. The Plaintiff Fails to State a Federal Civil Rights Claim.

A claim under 42 U.S.C. § 1983 has two essential elements: (1) the challenged conduct is attributable to a person acting under color of state law, and (2) the conduct deprived the plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535 (1981); Soto v. Flores, 103 F.3d 1056, 1061 (1st Cir. 1997). The first element is undisputed in that the named defendants were state corrections officials acting under color of law.

LeMay asserts that the defendants violated his constitutional rights under the 4th and 8th Amendments. (Complaint, ¶ 18) As an initial matter, the 8th Amendment does not apply in this situation because LeMay is not a prisoner convicted of a crime for which he is serving a criminal sentence. See King v. Greenblatt, 53 F.Supp. 2d 117, 138 (D.Mass. 1999) (civilly-committed patients are not "prisoners" for purposes of the Prison Litigation Reform Act, 18

4

U.S.C. § 3626). LeMay is at the MTC for treatment, not for punishment, and thus the 8th Amendment does not apply to him.

LeMay's claims are properly analyzed under the 14th Amendment Due Process clause. Seling v. Young 531 U.S. 250, 265 (2001) (applying Due Process clause to civilly-committed "sexually violent predators"); Cameron v. Tomes, 990 F.2d 14 (1st Cir. 1993) (touchstone for MTC resident's claim is the Due Process Clause of the 14th Amendment, requiring conditions that do not fall below the minimum standards of civilized decency).

To demonstrate a substantive due process violation, a plaintiff must show either that (1) a specific liberty or property interest protected by the 14th Amendment has been violated, or (2) the state's conduct "shocks the conscience." Brown v. Hot, Sexy and Safer Productions, Inc., 68 F.3d 525, 531 (1st Cir. 1995), cert. denied, 116 S.Ct. 1044 (1996); Fernandez v. Rapone, 926 F.Supp. 255, 262 (D.Mass. 1996). With regard to the latter standard, substantive due process is violated when state action is "egregiously unacceptable, outrageous, or conscience-shocking." Amsden v. Moran, 904 F.2d 748, 754 (1st Cir. 1990), cert. denied, 498 U.S. 1041 (1991); Santiago de Castro v. Morales Medina, 943 F.2d 129, 131 (1st Cir. 1991). "Offensive conduct is not conscience-shocking, however, in a substantive due process sense, merely because it trespasses on 'some fastidious squeamishness or private sentimentalism.'" Id., 943 F.2d at 131-132, quoting Rochin v. California, 342 U.S. 165, 172 (1952). The threshold for alleging a

5

substantive due process claim is high. Brown, 68 F.3d at 532; Fernandez, 926 F.Supp. at 263.

LeMay's allegations fail to meet this standard.[2] It is not surprising that residents of the MTC are periodically required to submit to urinalysis testing. LeMay himself does not contend that correction officials were without authority to order him to produce a urine specimen for testing. In fact, he concedes that the defendants were carrying out "lawful activities," although LeMay claims they employed "unnecessary harshness." (Complaint, ¶ 18)

Courts have held that random urinalysis drug testing of prisoners is reasonably related to legitimate penological interests. See Thompson v. Souza, 111 F.3d 694 (9th Cir. 1997). The same principle applies to a secure treatment facility like the MTC where residents are involuntarily held after civil commitment by the court. Among the purposes of the commitment of sexually dangerous persons is their treatment, but also their confinement and custody as a means of protecting the public. See Seling, 531 U.S. at 261-262. Periodic urinalysis testing at the MTC furthers these goals and helps to ensure that conditions remain safe for its residents. See Youngberg v. Romeo, 457 U.S. 307, 315-316 (1982)(persons who are civilly-committed involuntarily have due process right to safe conditions of confinement).

LeMay's allegation that he was forced to stand barefoot in

---

[2] LeMay does not contend that the defendants violated any specific liberty or property interest protected by the 14th Amendment.

6

urine while two officers watched him produce a urine sample, does not state a substantive due process claim. *See* Thompson, 111 F.3d 694, 703 (no 8th Amendment violation where prisoner forced to stand on damp bathroom floor without shoes while correction officer watched him urinate into a plastic bottle). LeMay does not allege that members of the opposite sex viewed the urination or that other inmates could see him. The presence of the officers was reasonable to safeguard the integrity of the test and to maintain control over the situation. Id. LeMay does not allege that he was physically abused or even that the officers physically touched him. *See* Fernandez, 926 F.Supp. at 262.

Furthermore, LeMay fails to state a federal civil rights claim with respect to his allegation that he was the subject of derision by the unknown officers. *See* Pittsley v. Warish, 927 F.2d 3, 7 (1st Cir. 1991) ("emotional injury which results solely from verbal harassment…is generally not sufficient to constitute an invasion of an identified liberty interest"); Brown v. Croce, 967 F.Supp. 101, 104 (S.D.N.Y. 1997); Fernandez v. Rapone, 926 F.Supp. 255, 263 (D.Mass. 1996) (no constitutional violation resulted from occasional degrading remarks by correction officers during strip searches); Arruda v. Fair, 547 F.Supp. 1324, 1334 (D.Mass. 1982)(verbal taunts of officers did not render search policy unreasonable).

To the extent that LeMay claims that the actions of the unknown officers embarrassed him, he fails to state a claim against

7

Sgt. Kane for failing to intervene. While not to be condoned, even if the officers did point and laugh at LeMay on the one occasion alleged in the complaint, no constitutional violation ensued. Fernandez, 926 F.Supp. at 263. LeMay's allegation simply does not state a triable § 1983 claim against Sgt. Kane.

### 3. Neither Dennehy nor Murphy is Liable Under the Theory of Respondeat Superior.

LeMay does not allege that Dennehy or Murphy personally participated in the incident of September 8, 2003. He claims only that Dennehy "is the defendants' superior," (Complaint, ¶ 20); that Murphy is the "supervisor" of Sgt. Kane and the unnamed defendants and is "responsible for their actions and training." (Complaint, ¶ 21) Supervisory liability cannot rest on the theory of respondeat superior. Monell v. Department of Social Services, 436 U.S. 658, 690-692 (1978); Seekamp v. Michaud, 109 F.3d 802, 808 (1st Cir. 1997); Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 562 (1st Cir. 1989). A supervisor "may be found liable only on the basis of [his] own acts or omissions." Figueroa v. Aponte-Rogue, 864 F.2d 947, 953 (1st Cir. 1989).

There is supervisory liability only if (1) there is subordinate liability, and (2) the supervisor's action or inaction was "affirmatively linked" to the constitutional violation caused by the subordinate." Aponte-Matos v. Toledo-Davila, 135 F.3d 182, 192 (1st Cir. 1998). The affirmative link must amount to "supervisory encouragement, condonation or acquiescence, or gross

8

negligence amounting to deliberate indifference." Lipsett v. University of Puerto Rico, 864 F.2d 881, 902 (1st Cir. 1988).

In this case, for the reasons previously discussed, there is no subordinate liability. The claims against the supervisory defendants, Dennehy and Murphy, must also be dismissed. *See* Seaver v. Manduco, 178 F.Supp.2d 30, 39 (D.Mass. 2002). Moreover, no affirmative link has been established between the alleged violation and either Dennehy or Murphy. Stratton v. City of Boston, 731 F.Supp. 42, 47 (D.Mass. 1989).

9

## CONCLUSION

The complaint should be dismissed because it fails to state a claim upon which relief can be granted for the plaintiff against any of the defendants.

                                      Respectfully submitted,

                                      NANCY ANKERS WHITE
                                      Special Assistant Attorney General

Date: March 22, 2005          __/s/ DAVID J. RENTSCH_____
                                      David J. Rentsch, Counsel
                                      Legal Division
                                      Department of Correction
                                      70 Franklin Street, Suite 600
                                      Boston, MA  02110-1300
                                      (617) 727-3300, ext. 142
                                      BBO #544926

## CERTIFICATE OF SERVICE

    I, David J. Rentsch, certify that on this day I mailed a copy of the foregoing motion and memorandum to the plaintiff, Thomas C. LeMay, pro se by first class mail, postage pre-paid, at the Mass. Treatment Center, 30 Administration Road, Bridgewater, MA  02324:

Date: March 22, 2005          __/s/ DAVID J. RENTSCH_____
                                      David J. Rentsch, Counsel