UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                      )
THOMAS C. LEMAY,                      )
     Plaintiff                        )
                                      )
     v.                               )     CIVIL ACTION
                                      )     NO. 04-12676-REK
KATHLEEN M. DENNEHY, Commissioner,    )
ROBERT MURPHY, Superintendent,        )
PHIL KANE, Sergeant Training Officer, )
JOHN DOE #1, Officer No. 1,           )
JOHN DOE #2, Officer No. 2, and       )
JOHN DOE #3, John Doe No. 3 and       )
Shift Commander,                      )
     Defendants                       )
_____ )

**Memorandum and Order**
August 9, 2005

**I. Pending Matters**

Pending for decision are matters related to the following filings:

(1) Defendants' Motion to Dismiss (Docket No. 14, filed March 22, 2005);

(2) Memorandum of Law in Support of the Defendants' Motion to Dismiss (Docket No. 15, filed March 22, 2005);

(3) Plaintiff's Motion Not to Dismiss (Docket No. 16, filed March 25, 2005);

(4) Memorandum of Law in Support of the Plaintiff's Motion Not to Dismiss (Docket No. 17, filed March 25, 2005);

(5) Motion to Compel Discovery (Docket No. 18, filed May 31, 2005);

(6) Affidavit in Support of Motion to Compel (Docket No. 19, filed May 31, 2005);

(7) Defendant Murphy's Opposition to the Plaintiff's Motion to Compel Discovery (Docket No. 20, filed May 31, 2005);

(8) Plaintiff's Amended Request for Discovery (Docket No. 21, filed June 8, 2005); and

(9) Defendant Murphy's Opposition to the Plaintiff's Motion to Compel Discovery (Docket No. 22, filed June 10, 2005).

## II. Factual and Procedural Background

Lemay filed his complaint on December 14, 2004. (Docket No. 4.) Lemay moved for leave to proceed in forma pauperis (Docket No. 1, filed December 14, 2004), and leave was granted (Docket No. 5, filed January 12, 2005).

Lemay is a resident of the Massachusetts Treatment Center ("the MTC") in Bridgewater, Massachusetts. (Defs.' Mem. of Law, Docket No. 15, at 1; Pl.'s Mem. in Support, Docket No. 17, at 1.) The MTC is a secure treatment facility for sexually dangerous persons operated by the Massachusetts Department of Correction ("DOC"). (Id.) Lemay was civilly committed to the MTC in 1999. (Id.)

Lemay's complaint can be liberally construed to allege the following facts:

On or about September 8, 2003, at around 1:30 a.m., the plaintiff was handcuffed behind his back and was removed from general population at the Newmansket Correctional Facility in Bridgewater, Massachusetts, and placed in a cell in the "New Mans Section" of the facility. The purpose of this activity was to conduct a urine test. Lemay was ordered to strip all his clothes off, including his shoes, and to stand naked. Lemay noticed that he was standing in someone else's urine so he requested that he be able to put his shoes back on so that he would not catch a disease. John Doe No.

> 1, an officer on the M-3 shift, told Lemay to shut up and urinate in a cup that the Sergeant, Phil Kane, had just handed him. Kane, Doe No. 1, and John Doe No. 2, another officer on the M-3 shift, did this in disregard to the risk to Lemay's health posed by standing in urine and out of some sort of bad motive.
>
> After handing Lemay a cup, Kane went back to doing paperwork and Doe No. 1 pulled a chair up and sat just four feet from Lemay while he urinated. Doe No. 1's head was at the level of Lemay's waist while Lemay urinated. Doe No. 2 stood on Lemay's right side by the chair while Lemay urinated. Doe No. 1 told Lemay to face him while Lemay urinated in the cup.
>
> When Lemay turned to face the officers, Doe No. 1 pointed at his penis and giggled "like a little girl." Doe No. 2 began to laugh as well. Both glared at Lemay, made gestures, and laughed in such a way that Lemay felt that he was "on a stage for their sexual pleasure." Kane did nothing to stop this behavior.
>
> Lemay considered filing a grievance but did not do so after John Doe No. 3, the shift commander at the Newmansket Correctional Facility during the events in question, told him that it would be in Lemay's best interest not to file the grievance.
>
> Kathleen M. Dennehy, is the superior of Kane, Doe No. 1, and Doe No. 2. Robert Murphy is the Supervisor of Kane, Doe No. 1, and Doe No. 2 and is responsible for their training.

(Docket No. 4.)

On March 22, 2005, the named defendants, Dennehy, Murphy, and Kane, filed a motion to dismiss. (Docket No. 14.) On May 25, 2005, Lemay responded to the motion to dismiss by filing a motion not to dismiss. (Docket No. 16.)

On May 31, 2005, Lemay filed a motion to compel discovery. (Docket No. 18.) Murphy filed an opposition to this motion on May 31, 2005. (Docket No. 20.) On June 8, 2005, Lemay filed an amended request for discovery. (Docket No. 21.) Murphy filed an opposition on June 10, 2005. (Docket No. 22.)

3

### III. Analysis

**A. Name of Phil Kane**

The defendants indicate that Phil Kane's name is mistakenly spelled "Cane" in the complaint. (Docket No. 15, at 1.) The name is spelled "Phul Cane" on the docket. Therefore, I will instruct the Clerk to change the docket to reflect the correct spelling of Phil Kane's name.

**B. Motion Not to Dismiss**

Lemay's opposition to the defendants' motion to dismiss is improperly titled as motion. Therefore, I will instruct the Clerk to take this filing (Docket No. 16) off of the list of pending motions.

**C. Motions to Compel Discovery**

Lemay seeks the names of unknown personnel who conducted a urinalysis test on him. Lemay explains that on January 12, 2005, he served interrogatories on the defendants requesting the names "of the four (4) person[s] who took part in the urinalysis test on the plaintiff on or about September 8, 2003[.]". (Docket No. 19.) Lemay indicates in the motion that he was wrong about the date and wants the names of the persons who conducted the urinalysis test between the dates of June 20, 2003, and July 11, 2003. From the documentation accompanying the motion, it appears that this motion to compel and the underlying discovery requests are directed at defendant Murphy. Lemay has also filed an amended motion to compel seeking certain "documents." (Docket No. 21.)

Defendant Murphy filed oppositions to Lemay's discovery motions. (Docket No. 20, 22.) He indicates that the discovery request he received was dated February 12, 2005. He also notes that the interrogatories he received ask the same question that Lemay claims to have

asked in the January 12, 2005, interrogatory.  He then indicates that he already answered the February 12, 2005, interrogatory concerning an alleged urinalysis conducted on September 8, 2003.  Finally, he contends that no ground is alleged to compel him to provide information about a urinalysis conducted on a different date than the one alleged in the original interrogatory.  Murphy also seeks a stay of discovery pending the outcome of the pending motion to dismiss.

A review of the motions indicates that the January 12, 2005, and the February 12, 2005, interrogatories are the same item and that the parties are just referring to them with different titles.  Even if this were not so, both interrogatories ask the same question and defendant Murphy answered that question.  Therefore, no ground is alleged to compel defendant Murphy to provide additional discovery concerning a different date because no discovery request has been made concerning that date.  Thus, I will deny without prejudice the motions to compel.  In addition, since I decide the motion to dismiss in this Memorandum and Order, Murphy's request for a stay of discovery is moot.

**D. Motion to Dismiss**

    **1. Legal Standard**

The defendants move to dismiss Lemay's complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  A "court can dismiss for failure to state a claim only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory."  In re New England Mut. Life Ins. Co. Sales Practices Litigation, 236 F. Supp. 2d 69, 73 (D. Mass. 2002) (quoting Berezin v. Regency Sav. Bank, 234 F.3d 68, 70 (1st Cir. 2000) (quoting Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990) (internal quotation marks deleted))).  A "court must accept all well pleaded factual allegations" in

the complaint "as true and must give plaintiff the benefit of all reasonable inferences." Id. (citing LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 508 (1st Cir. 1998)). In addition, in applying the requirement of Federal Rule of Civil Procedure 8(a)(2) of "a short and plain statement of the claim showing that the pleader is entitled to relief," a court "should continue to 'eschew any reliance on bald assertions, unsupportable conclusions, and opprobrious epithets.'" Educadores Puertorriquenos en Accion v. Hernandez, 367 F.3d 61, 66–68 (1st Cir. 2004) (quoting Chongris v. Board of Appeals, 811 F.2d 36, 37 (1st Cir. 1987)). Finally, when construing pleadings drafted by pro se parties, courts are to set standards less stringent than those that would be imposed on documents drafted by a lawyer. See, e.g., Haines v. Kerner, 404 U.S. 519, 520–21 (1972).

### 2. Lemay's Federal Claims

Lemay contends that he is bringing claims for violation of his Fourth and Eighth Amendment rights as well as a claim of sexual harassment under state law arising out of the incident in the "New Mans Section." In addition, he claims that he was denied due process because Doe No. 3 told him not to file a grievance. The named defendants attack Lemay's claims made pursuant to 42 U.S.C. § 1983 that are based upon alleged violations of the Fourth and Eighth Amendments. The named defendants also seek dismissal on any related claim that Lemay attempts to bring solely pursuant to the Fourteenth Amendment Due Process Clause. The named defendants do not specifically address Lemay's claim that the actions of Doe No. 3 deprived him of Due Process.

### i. Defendant Kane

The only direct claim against a named defendant involves a claim against defendant Kane. Defendant Kane is alleged to have taken part in conducting a urinalysis test on Lemay. Specifically, he gave Lemay a cup to urinate in and was present as Lemay was forced to disrobe, stand in urine, and turn to be frontally observed. As will become clear later, it is important for the purposes of my analysis of the direct claim against Kane that he did not actively take part in the comments and gestures made by Doe No. 1 and Doe No. 2.

Lemay may bring his claims alleging federal constitutional violations by state officials pursuant to 42 U.S.C. § 1983. "A claim under section 1983 has two essential elements. First, the challenged conduct must be attributable to a person acting under color of state law . . . ; second, the conduct must have worked a denial of rights secured by the Constitution or federal law." Soto v. Flores, 103 F.3d 1056, 1061 (1st Cir. 1997). The defendants concede that they were acting under color of state law. (Defs.' Mem. of Law, Docket No. 15, at 3.)

Lemay having established the first element, the focus shifts to whether Lemay was denied rights secured by the Constitution or federal law. As a technical matter, Lemay's Fourth and Eighth Amendment claims should be referred to as being applied to the state through the Due Process Clause of the Fourteenth Amendment. See e.g., Kane v. Winn, 319 F. Supp. 2d 162, 193 (D. Mass. 2004). This technical matter aside, the legal analysis of the Fourth and Eighth Amendment claims is not altered by their incorporation into the Fourteenth Amendment.

The named defendants contend that since Lemay is civilly committed and not criminally incarcerated the Eighth Amendment is not applicable to this case. This argument is correct. The Eighth Amendment does not apply until someone is found guilty of a crime. See

City of Revere v. Massachusetts General Hosp., 463 U.S. 239, 244 (1983).  But see Knight v. Mills, 836 F.2d 659, 669 n.15 (1st Cir. 1987).

  Therefore, I turn my analysis to Lemay's Fourth Amendment claim.  The named defendants analyze the plaintiff's claim under the "shocks the conscience" standard of the Fourteenth Amendment Due Process Clause based on their contention that Lemay does not identify any protected liberty interest.  To demonstrate a violation of a person's substantive due process rights, a party must show either "a deprivation of an identified liberty or property interest protected by the Fourteenth Amendment" or that "the state's conduct shocks the conscience."  Brown v. Hot, Sexy and Safer Productions, Inc., 68 F.3d 525, 531 (1st Cir. 1995).  Lemay claims that his interest in being free from unreasonable searches and seizures as outlined by the Fourth Amendment was violated by the defendants.  See Harrington v. Almy, 977 F.2d 37, 43 (1st Cir. 1992) ("That interest here is the familiar Fourth Amendment right to be free from unwarranted searches and seizures which is protected against state action through the due process clause of the Fourteenth Amendment.").  If the Fourth Amendment is applicable, then I conduct my inquiry only under that rubric and do not conduct a separate "shocks the conscience" inquiry.  See County of Sacramento v. Lewis, 523 U.S. 833, 843 (1998) ("[I]f a constitutional claim "is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.") (quoting United States v. Lanier, 520 U.S. 259, 272 n.7 (1997)).

  The Fourth Amendment, as incorporated through the Fourteenth Amendment, applies to Lemay's claim against Kane.  Urine tests conducted by staff members of a civil commitment facility implicate the Fourth Amendment.  See Ferguson v. City of Charleston, 532

U.S. 67, 76 (2001) (noting that urine tests conducted by officials at state hospitals to search for drug use implicate the Fourth Amendment); Anthony v. City of New York, 2001 WL 741743, *9 (Jul. 2, 2001) (noting that the Fourth Amendment is applicable to urine tests conducted on involuntarily committed individuals).

Even though the Fourth Amendment is applicable, viewing the complaint under the Fourth Amendment, Lemay cannot state a claim against defendant Kane for his conduct related to the urine test. Since the Fourth Amendment is applicable, I must examine the reasonableness of the test. See Skinner v. Railway Labor Executives' Ass'n., 489 U.S. 602, 619 (1989). "[T]he permissibility of a particular practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." Id. (quotations omitted). The important concerns of a civil commitment facility in rehabilitating and treating detainees as well as in maintaining safety justifies conducting frontally monitored urine tests. See Bell v. Wolfish, 441 U.S. 520, 547 (1979) (holding that the decision to test civil detainees for drugs must be accorded "wide-ranging deference"); Williams v. Nelson, 2004 WL 2830666, *13 (Dec. 9, 2004). The fact that the bathroom floor on which the test was conducted was damp with urine does not make the test unreasonable. I am reluctant to find a violation based upon the cleanliness of the search site. See Bell, 441 U.S. at 547.

Although no "shocks the conscience" inquiry of this aspect of Lemay's claim is necessary, Lemay's allegations would not be sufficient even if such an inquiry were appropriate. The Court of Appeals for the First Circuit "ha[s] found conscience shocking conduct only where the state actors engaged in extreme or intrusive physical conduct." Brown, 68 F.3d at 532 (quotation marks omitted). Given the institutional concerns noted above, the urine test itself

9

cannot amount to conscious shocking conduct. See Bell, 441 U.S. at 547; Williams, 2004 WL 2830666 at *13. In addition, being forced to stand on a bathroom floor damp with urine may be deemed inconsiderate, but it does not "shock the conscience" because it is not extreme or intrusive physical conduct.

### ii. Defendants Kane, Dennehy, and Murphy as Supervisors

Since no direct federal claim against any named defendant is properly alleged, the only remaining source of federal liability against the named defendants is their supervisory positions over the unnamed defendants. The named defendants contend that Kane, Dennehy, and Murphy cannot be held liable in their supervisory capacity. "Supervisory liability under 42 U.S.C. § 1983 cannot be predicated on a *respondeat superior* theory, but only on the basis of the supervisor's own acts or omissions." Seekamp v. Michaud, 109 F.3d 802, 808 (1st Cir. 1997) (citation, quotation marks, and brackets omitted). A supervisor may be held liable if:

> (1) the behavior of his subordinates results in a constitutional violation, and (2) the supervisor's action or inaction was affirmatively linked to that behavior in that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence amounting to deliberate indifference.

Id. (quotation marks and brackets omitted). In this case, even if the existence of a substantive constitutional violation by the unnamed defendants based on the conduct alleged in the complaint is assumed, the complaint does not allege facts sufficient to affirmatively link Dennehy or Murphy to any of the misconduct. No allegation is made that these defendants were aware of the misconduct of the other defendants. Nor is there any allegation or inference that they were on notice that such misconduct had previously occurred in the facility. Therefore, the motion to dismiss must be granted as to Dennehy and Murphy.

The situation of defendant Kane is more problematic but dismissal is still warranted. Although no allegation is made that Kane knew of the conduct of Doe No. 3 and no allegation that Kane was privy to information that should have put him on notice before misconduct occurred to any proclivity on the part of the unnamed defendants to engage in misconduct, it is at least unclear whether Kane knew about the conduct of Doe No. 1 and Doe No. 2 at the time it allegedly occurred. The complaint indicates that Kane "went back" to do paperwork, but it does not state where he went. Since Kane can only be liable based upon his acquiescence to the conduct of Doe No. 1 and Doe No. 2, it is important to know whether Lemay contends that Kane was aware of the conduct wherever he was doing paperwork.

If I were to find a colorable claim against Doe No. 1 and Doe No. 2, I would be inclined to allow Lemay the opportunity to file an amended complaint and state clearly whether Kane was aware of the unnamed officers' conduct. Because Lemay does not make a colorable claim under the rubric of the Fourth Amendment or the Fourteenth Amendment "shocks the conscience" standards against Doe No. 1 and Doe No. 2, however, the claim against Kane must be dismissed.

I have previously upheld the drug test in all respects except for the verbal comments and gestures of Doe No. 1 and Doe No. 2. Therefore, Kane can only be liable based upon the verbal comments and gestures because the other conduct does not constitute a constitutional violation.

The first question is whether the Fourth Amendment rubric governs this inquiry. See County of Sacramento, 523 U.S. at 843. Since the conduct here was attendant to a search, I find the Fourth Amendment applicable. The conduct of state officials in conducting an otherwise

lawful search, or seizure, or both, can create a Fourth Amendment claim.  See Tennessee v. Garner, 471 U.S. 1, 8 (1985) ("This submission ignores the many cases in which the Court, by balancing the extent of the intrusion against the need for it, has examined the reasonableness of the manner in which a search or seizure is conducted."); see also Fontana v. Haskin, 262 F.3d 871, 878–79 (9th Cir. 2001) (denying a defendant summary judgment on a Fourth Amendment claim in a case involving alleged sexual harassment of a plaintiff following her arrest and noting that "the Fourth Amendment generally proscribes unreasonable intrusions on one's bodily integrity and other harassing and abusive behavior that rises to the level of 'unreasonable seizure'") (citation and quotations marks omitted).

Although the Fourth Amendment applies to this aspect of Lemay's allegations, the conduct at issue does not amount to a Fourth Amendment violation.  This holding is supported by the general reluctance to find constitutional violations based solely on idle threats and verbal harassment.  See Pittsley v. Warish, 927 F.2d 3, 7 (1st Cir. 1991) ("Fear or emotional injury which results solely from verbal harassment or idle threats is generally not sufficient to constitute an invasion of an identified liberty interest.").

Cases where courts have found sexually harassing conduct attendant to a seizure to amount to a Fourth Amendment violation support finding no Fourth Amendment violation here.  Courts finding Fourth Amendment claims in sexual harassment cases have been presented with allegations of *physically* abusive conduct.  See Fontana, 262 F.3d. at 878–79; Love v. Town of Granby, 2004 WL 1683159, *4–6 (D. Conn. Jul 12, 2004).  The reason for distinguishing between physical and non-physical conduct has to do with the degree of the "intrusion[] on bodily integrity."  Fontana, 262 F.3d at 878–79.  Verbal comments and gestures alone generally do not

amount to anything more than de minimis "intrusions on bodily integrity." See id. at 880 (noting that "some bodily intrusions may be provably *de minimus* though finding it unnecessary to define when intrusions are *de minimus*); Pittsley, 927 F.2d at 7 ("Fear or emotional injury which results solely from verbal harassment or idle threats is generally not sufficient to constitute an invasion of an identified liberty interest.").

Although I find that the Fourth Amendment governs this inquiry, I note that I would find no constitutional violation under the "shocks the conscience" standard either. The complaint contends that Doe No. 1 pointed at Lemay's penis and giggled "like a little girl." The complaint also alleges that Doe No. 2 began to laugh as well. Finally, the complaint contends that both Doe No. 1 and Doe No. 2 glared at Lemay, made gestures, and laughed in such a way that Lemay felt that he was "on a stage for their sexual pleasure." Although comments and other forms of psychological harm might shock the conscience sufficiently to state a Due Process claim, see Souza v. Pina, 53 F.3d 423, 427 (1st Cir. 1995), if such claims exist, the circumstances are few. The Court of Appeals for the First Circuit holds that a public accusation of wrongdoing by a prosecutor, a single comment by a police officer to a child that the child may never see the father again, and the conducting of a sexually explicit AIDS presentation without prior parental approval do not amount to behavior that shocks the conscience. Grendell v. Gillway, 974 F. Supp. 46, 51 (D. Me. 1997) (citing Pittsley v. Warish, 927 F.2d 3, 5–7 (1st Cir. 1991) (prosecutor); Souza v. Pina, 53 F.3d 423 (1st Cir. 1997) (police officer); and Brown, 68 F.3d 525). Given this precedent, I cannot find that a single incident of taunting during an otherwise lawful urine test is sufficient to state a claim under the "shocks the conscience" standard of the Fourteenth Amendment.

13

**3. Status of Remaining Claims**

Having disposed of the federal claims pending against the named defendants and having found that Lemay does not have a federal claim against Doe No. 1 and Doe No. 2, I am left with a claim of sexual harassment pursuant to state law against all of the defendants and a possible federal civil rights claim against Doe No. 3. I believe that this situation calls for dismissal of the claim without prejudice so that Lemay can proceed with them in state court. I will, however, provide an opportunity for Lemay to convince me otherwise. Therefore, I will order Lemay to show good cause why I should not dismiss without prejudice his claims against the unnamed defendants for failure to comply with Rule 4(m) and decline to exercise supplemental jurisdiction over his remaining state claim against the named defendants.

The unnamed defendants have yet to be identified, and, consequently, these defendants have yet to be served. Rule 4(m) of the Federal Rules of Civil Procedure require that service be made within 120 days of filing a complaint. Rule 4(m) also notes:

> If service . . . is not made upon a defendant within 120 days . . . the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Id.

Lemay filed this case on December 14, 2004. Well over 120 days have passed since that time and the unnamed defendants have yet to be identified or served by Lemay. I am, therefore, inclined to dismiss these claims. In addition, Lemay, as can be inferred from his motion to compel discovery, now appears to contend that the urinalysis at issue occurred between June

14

and July 2003 instead of on September 8, 2003. This implies that Lemay is now fishing for a claim. Finally, the only claim that appears to remain against the named defendants is a sexual harassment claim brought pursuant to state law. I am not inclined to let what appears to amount to at most a state case linger on the federal docket. See 28 U.S.C. § 1367(c)(3).

## ORDER

For the foregoing reasons it is ORDERED:

(1) Defendants' Motion to Dismiss (Docket No. 14) is ALLOWED IN PART as explained in Part III of the above Memorandum;

(2) The Clerk is instructed to take Plaintiff's Motion Not to Dismiss (Docket No. 16) off the list of pending motions;

(3) Motion to Compel Discovery (Docket No. 18) is DENIED WITHOUT PREJUDICE;

(4) Plaintiff's Amended Request for Discovery (Docket No. 21) is DENIED WITHOUT PREJUDICE;

(5) The Clerk shall correct the name of Phil Kane on the docket; and

(6) Lemay is ordered to show good cause why I should not dismiss without prejudice his claims against the unnamed defendants for failure to comply with Rule 4(m) and decline to exercise supplemental jurisdiction over his remaining state claim against the named defendants. Lemay shall make his good cause showing by August 31, 2005.

/s/Robert E. Keeton
Robert E. Keeton
Senior United States District Judge
